# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. H-17-103** |
| | § | |
| **MELVIN ASKEW** | § | |
| **Defendant** | § | |

## PLEA AGREEMENT

The United States of America, by and through Abe Martinez, Acting United States Attorney for the Southern District of Texas, and Tim S. Braley, Assistant United States Attorney, and the defendant, Melvin Askew ("Defendant"), and Defendant's counsels Kent Schaffer and James Kennedy, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Counts One of the Criminal Information. Count One charges the Defendant with Conspiracy to Commit Money Laundering, in violation of 1956(a)(1)(B)(i), (a)(1)(B)(ii), and (h). Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Superseding Indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The statutory penalty for a violation of 1956(a)(1)(B)(i), (a)(1)(B)(ii), and (h) is a fine of **not more than $500,000.00 or twice the value of the property involved in the transaction, whichever is greater or imprisonment for not more than twenty (20) years, or both**, and not more than 5 years supervised release 18, USC§ 3583(b)(1). Additionally, Defendant may receive

a term of supervised release after imprisonment of not more than three (3) years. *See* Title 18, United States Code, sections 3559(a)(3) and 3583(b)(2).

Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(3) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Waiver of Appeal and Collateral Review

4. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if

otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event the Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

5. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

6. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

7. The United States agrees to each of the following:

(a)     At sentencing, the United States agrees not to oppose Defendant's request to the Court that he receive a two (2) level downward adjustment pursuant to section 3E1.1(a) of the United States Sentencing Guidelines, and an additional one-level departure based on the timeliness of the plea or the expeditious manner

in which Defendant provided complete information regarding his role in the offense (if Defendant's offense level is 16 or greater).

### Agreement Binding - Southern District of Texas Only

*REI · 11/6/17*

8. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney. The United States will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

9. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a)     to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)     to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e)     to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

10. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the

sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

11. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

> (a)  If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

> (b)  At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

> (c)  At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

12. Defendant is pleading guilty because he is in fact guilty of the charges contained in the Criminal Information. If this case were to proceed to trial, the United States could prove

each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

Between 2003, and December 2012, Melvin Askew (Askew) operated numerous illegal gambling establishments and leased gaming machines to other game rooms at various locations all within Southern District of Texas. The game rooms featured slot-type gambling machines and eight-liner electronic gambling machines that paid cash winnings to customers. Askew also leased real property to persons who he knew operated gambling operations.

In order to conceal the true nature, source, and control of his gambling proceeds, Askew placed leases and utility contracts for his game rooms in the names of his game room employees. Further, Askew paid bills with cash from gambling proceeds drawn from accounts into which cash gambling proceeds had been structured to avoid currency transaction reporting requirements. Askew also used gambling proceeds to purchase commercial real estate and additional gaming machines, both of which were then rented to game room operators.

1. Beginning around 2003, Askew began structuring cash deposits to bank accounts in amounts less than $10,000.
   a. During a two week period in July 2006, Askew made $99,300 in cash deposits all in increments under $10,000 withdrawing the money on July 13, 2006, to purchase a home located at 509 Pecan Loop in Baytown, Texas for a relative.

   b. Between March 3, 2008 and December 3, 2008, Askew deposited $126,533.00 in cash to the account of TMS Vending, all in increments less than $10,000.00. Between January 6, 2009 and December 18, 2009, Askew deposited $281,627.00 in cash to the account of TMS Vending, all in increments less than $10,000.00.

   c. In June 2009, Askew structured deposits and thereafter purchased 16 gaming machines for $37,350.00.

   d. Between May 5, 2008 and October 2010, Askew made cash deposits to an account for Casino Gaming Technology most in increments less than $10,000 totaling $991,522. In October 2010, Askew used structured funds from this account as a down payment for the purchase of a commercial property located at 975 through 999 Sheldon Road in Channelview, Texas. This property housed a shop where Askew repaired gaming machines.

2. In 2003, Askew paid Dustin Tankersley $500 to place the utilities for MJ's game room in Tankersley's name, helping disguise Askew's control of the game room.

3. In January 2007, Askew placed the lease for the Rio game room at 777 Sheldon Road in Channelview, Texas in the name of Eric Anderson, Sr.

4. Askew paid game room employees in cash and failed to keep payroll records for these employees effectively disguising control of several game rooms.

5. Real property used in the support of the gambling enterprise is located at:

    a. 918 West Houston, Highlands, Texas, where $5 bills for the game rooms were stored and was listed as the location of gaming machines on official paperwork;

    b. 15370 South Brentwood in Channelview, Texas, which housed the Horseshoe game room controlled by Askew and was later leased to Roger Boutte for the operation of another illegal game room;

    c. 2610 East Bayshore in San Leon, Texas, which housed My Place Game Room run by Askew;

    d. 975-999 Sheldon Road in Channelview, Texas, which housed Melvin Askew's gaming machine repair shop.

The amount of money Askew obtained for the offense to which he is pleading guilty is at least $600,000.00 in United States currency. At least $600,000.00 in United States currency was involved in the money laundering conspiracy to which Askew is pleading guilty. Askew stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, § 853(p) exists.

## Breach of Plea Agreement

15. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Restitution, Forfeiture, and Fines – Generally

16. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets

over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would affect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

17. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

18. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant agrees to testify truthfully in all judicial proceedings, including all hearings and trials, involving the forfeiture of the properties identified in paragraph 20 herein. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

19. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

### Forfeiture

20. Defendant stipulates and agrees that Defendant obtained at least $600,000.00 from the criminal offense to which he is pleading guilty and that the factual basis for his guilty plea supports the forfeiture of $600,000.00. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, § 853(p) exists. Defendant agrees to forfeit any of Defendant's property in substitution, up to a total forfeiture of $600,000.00. Defendant agrees to the imposition of a personal money judgment in that amount. Defendant agrees to pay to the United States $600,000.00 at the time of sentencing in substitute assets and in full satisfaction of the money judgment. Defendant will pay $600,000.00 via certified check at the time of sentencing.

21. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

22. Defendant abandons and waives any and all interest he may have in all currency, firearms, magazines, ammunition, and other assets which were seized in connection with this case on or about October 14, 2016. Defendant agrees not to contest the forfeiture of such assets (whether forfeited administratively or judicially), and he waives any and all rights to notice of forfeiture or other procedural requirements for forfeiture of such assets. Defendant understands and acknowledges that any property not forfeited in this case may nonetheless be subject to the collection or enforcement of a fine or other criminal monetary penalty, in the event that the Court imposes a criminal monetary penalty in this case.

23. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

**Fines**

24. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

**Complete Agreement**

25. This written plea agreement, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

26. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at _Houston_, Texas, on _November 6_, 2017.

Melvin Askew
Defendant

Subscribed and sworn to before me on _November 6_, 2017.

10

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____

Deputy United States District Clerk

APPROVED:

ABE MARTINEZ
Acting United States Attorney

By: _____

Tim S. Braley
Assistant United States Attorney
Southern District of Texas
Telephone (713) 567-9714

_____

Kent Schaffer
Attorney for Defendant

_____

James Kennedy
Attorney for Defendant

11

| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H- |
| | § | |
| Melvin Askew | § | |
| Defendant | § | |

## PLEA AGREEMENT -- ADDENDUM

We have fully explained to Defendant his rights with respect to the pending Superseding Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and we have fully and carefully explained to the Defendant the provisions of those Guidelines which may apply in this case. We have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, we have carefully reviewed every part of this plea agreement with Defendant. To our knowledge, the Defendant's decision to enter into this agreement is an informed and voluntary one.

_____     11-6-17
Kent Shaffer                         Date
Attorney for Defendant

_____     11-6-17
James Kennedy                        Date
Attorney for Defendant

I have consulted with my attorney and fully understand all my rights with respect to the Superseding Indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____     _____
Melvin Askew                                          Date
Defendant